**John J. LEONARD et al., Plaintiffs-Appellees,**

v.

**UNITED STATES POSTAL SERVICE et al., Defendants-Appellees.**

**Appeal of UNITED STATES of America et al.**

**No. 73–1270.**

United States Court of Appeals, First Circuit.

Heard Nov. 8, 1973.

Decided Jan. 17, 1974.

David M. Cohen, Atty., Dept. of Justice, with whom Irving Jaffee, Acting Asst. Atty. Gen., James N. Gabriel, U. S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, was on brief, for appellants.

Stephen E. Alpern, Atty., U. S. Postal Service, with whom Louis A. Cox, Gen. Counsel, and Harvey Letter, Asst. Gen. Counsel, Washington, D. C., were on brief, for U. S. Postal Service, and others, appellees.

Jeffrey W. Kobrick, Boston, Mass., with whom Piroska Soos, Boston, Mass., was on brief, for John J. Leonard, appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

Plaintiff John Leonard applied to the Postal Service for a job as a mail han-

dler and took a competitive examination. He passed the examination and was selected for a position. In the course of completing various forms plaintiff came across a question about "arrests". In response to this question he answered that he had once been arrested for "being in the company of a person who was . . . in possession . . . of marijuana" and for "conspiring to violate [the Massachusetts drug laws]" but he also stated that the charges had been dismissed. This revelation caused the Postal authorities to withdraw the offer of employment. After a letter of protest to the Postmaster in Boston proved fruitless, plaintiff brought suit in the United States district court, alleging that the denial of employment by the Postal Service on the basis of his arrest record denied him due process of law and equal protection of the laws under the United States Constitution.

While this case was pending in the district court, the Postal Service entered into a Stipulation of Settlement with the plaintiff which provided that plaintiff would be offered employment and given a partial back pay award of $3,000; that henceforth the Postal Service would not inquire into or consider a job applicant's record of arrests not leading to conviction unless the job applied for is designated as "sensitive" under Executive Order 10450, or unless the charges are currently pending; and that certain actions would be taken to implement the new policy. In its Order dated June 6, 1973, 360 F.Supp. 449, the district court granted permission to the Postal Service to enter into settlement of the case "upon the advice of its own counsel and against the advice of the United States Attorney via the United States Department of Justice". The court found authority in 39 U.S.C. § 2008(c) for settlement of litigation and claims by the Postal Service without interference by the Department of Justice. After denial of its motion for reconsideration the Department of Justice appeals to this court.

After passage in 1970 of the Postal Reorganization Act, P.L. 91–375, 39 U.S.C. § 101 et seq., the Postal Service emerged as "an independent establishment of the executive branch of the Government", 39 U.S.C. § 201. The Act exempts the Service from all federal laws dealing with "public or Federal contracts, property, works, officers, employees, budgets, or funds . . . " with the exception of certain specific provisions, 39 U.S.C. § 410(a). The Act also specifically empowers the Postal Service to, inter alia, sue or be sued, to "determine the character of, and necessity for, its expenditures", and to "settle and compromise claims by or against it", 39 U.S.C. § 401. Under § 1001 of the Act the Service sets its own appointment and promotion policies and under § 2003 there is established in the Treasury a Postal Service Fund, available to the Service without fiscal-year limitation for the payment of all expenses incurred by the Postal Service under the Act. The profile that appears from this restructuring is that of a governmental agency vested with considerable autonomy to carry out its mission, but subject to certain statutes of general application by specific reference.

The provisions of the Act regarding control over and settlement of litigation reflect, in our view, a somewhat uneasy and unresolved tension between the dependent and independent aspects of the new Service. Nothing in the Act expressly makes applicable, or expressly creates an exemption to, the general rule, codified in 28 U.S.C. §§ 516, 519, that the conduct and supervision of litigation involving the United States or an agency thereof is reserved to the Attorney General, except where "otherwise authorized by law".[1] However, 39 U.S.C. § 409(d) provides that the Depart-

1. See, e. g., The Gray Jacket, 5 Wall. (72 U.S.) 342, 18 L.Ed. 646 (1866); FTC v. Guignon, 390 F.2d 323 (8th Cir. 1968); Sutherland v. International Ins. Co. of New York, 43 F.2d 969 (2d Cir.), cert. denied, 282 U.S. 890, 51 S.Ct. 103, 75 L.Ed. 785 (1930).

ment of Justice "shall furnish" to the Postal Service "such legal representation as it may require". This provision is made subject to the general section of the Act governing cooperation with other government agencies, which states that "[t]he furnishing of property and services under this section shall be under such terms and conditions . . . as the Postal Service and the head of the agency concerned shall deem appropriate." 39 U.S.C. § 411.

There are also provisions which specifically provide that the Attorney General bring suit on behalf of the Postal Service in certain limited circumstances. Thus, under 39 U.S.C. § 2605 "[t]he Postal Service shall request the Attorney General to bring a suit" to recover monies paid out by the Service on account of mistake, fraud, collusion or misconduct.[2] 39 U.S.C. § 3008 authorizes the Service to request the Attorney General to seek a district court order directing compliance with a Postal Service order prohibiting mailing of offensive matter to particular addressees, and 39 U.S.C. § 3011 provides that the Service "may request" the Attorney General to commence a civil action against anyone using the mails to transport sexually oriented advertising in violation of § 3010. The present case does not fall into any of these special categories.

In the matter of settlement of litigation 39 U.S.C. § 401(8) empowers the

Service to "settle and compromise claims by or against it" and 39 U.S.C. § 2008(c) states that the Service "is authorized to make such expenditures and to enter into such contracts, agreements, and arrangements, upon such terms and conditions and in such manner as it deems necessary, *including the final settlement of all claims and litigation by or against the Postal Service.*" [Emphasis added.] The Reorganization Act also contains certain provisions concerning settlement of litigation concerning tort claims.[3]

 The question presented in this case is a rather narrow one. We must decide whether the Postal Service has the power to settle litigation, despite objection by the Department of Justice, where the subject matter of the litigation is not encompassed within the terms of 39 U.S.C. §§ 2605, 3008, and 3011; is not a tort claim; and involves substantive questions within the scope of the Service's independent authority.[4]

While we need not determine all of the contours of the authority given to the Service in 39 U.S.C. § 2008(c), we reject the theory put forward by the Justice Department that this section is no more than a device to avoid problems during audits by the Comptroller General and does not give any independent power to settle litigation.[5] The lan-

2. A related provision, 39 U.S.C. § 2601(a), provides that the Postal Service may collect debts; collect and remit fines, penalties and forfeitures; adjust accounts, and prescribe penalties for failure to render accounts; and may refer to the General Accounting Office uncollectible debts for collection. But the section goes on to say that "This subsection does not affect the authority of the Attorney General in cases in which judicial proceedings are instituted."

3. Under the provisions of 39 U.S.C. § 409(c) the Tort Claims Act is made applicable to all tort claims arising out of activities of the Postal Service. Under the Tort Claims Act the Attorney General has considerable authority over settlement of claims, 28 U.S.C. §§ 2672, 2677. However, 39 U.S.C. § 2603 provides that the Postal Service has the authority to settle a claim "for damage to persons or property resulting from the opera-

tion of the Postal Service [found] to be a proper charge against the United States, and . . . not cognizable under section 2672 of title 28 . . . . ."

4. Although we allowed the Postal Service to speak through its own attorneys at oral argument of this case, we did this only because of the peculiar circumstances presented. *See* The Gray Jacket, 5 Wall. (72 U.S.) 370, 18 L.Ed. 646 (1866). But we did not intend this in any way to indicate our judgment on the general question of whether the Service may represent itself in court without the approval of the Attorney General. Indeed, the question of representation in court, as distinct from the question of power to settle litigation, is not presented in this case and we intimate no view upon it.

5. The Justice Department argues that the explicit powers given to the Attorney Gener-

guage of § 2008(c) is not so limited in terms, and the legislative history pointed out to us does not indicate that the section was meant to have a reading not in accord with its literal language.[6] Nor do we accept the view that 39 U.S. C. § 409(d) gives the Justice Department authority in all instances to control the conduct of litigation, including complete power over settlement terms. The "shall furnish" language and the fact that this section is subject to the provisions of § 411, which speaks of "cooperation", indicates to us that, at least under the circumstances presented here, § 409(d) does not give the Attorney General veto power over a settlement approved by the Service.

Having said this, we need not go farther and attempt a definitive interpretation of the allocation of powers between the Postal Service and the Department of Justice under 28 U.S.C. §§ 516 and 519 and under 39 U.S.C. §§ 409 and 411, for all purposes.[7] Nor need we try to delineate the outer limits of the power of the Postal Service to settle claims in litigation against it. The terms of the settlement reached here between the

Service and the plaintiff concerned matters of only parochial interest, matters which, but for the fact that a suit had been brought, would clearly have been policy decisions within the sole prerogative of the Postal Service. The funds for payment of the back pay award are to come from the special Postal Service Fund and the hiring policies to be implemented affect only those aspects of personnel management committed to independent Postal Service control.[8]

Under these circumstances we think that we should be guided by language from the opinion of the Supreme Court in S & E Contractors, Inc. v. United States, 406 U.S. 1, 13, 92 S.Ct. 1411, 1418, 31 L.Ed.2d 658 (1972) wherein it was said that, "[n]ormally, where the responsibility for rendering a decision is vested in a coordinate branch of Government, the duty of the Department of Justice is to implement that decision and not to repudiate it." It was the intent of the Congress to create an independent Postal Service. It would be anomalous to hold that decisions normally committed wholly to the independent discretion of the Service are made subject to De-

al under 39 U.S.C. §§ 2605, 3008 and 3011, and under the Tort Claims Act (made applicable to the Postal Service by 39 U.S.C. § 409(c)), make untenable the position of the Postal Service that it has general power to settle litigation in which it is involved. We think that the provisions listed above go no further than perhaps to create certain specific exceptions to any authority which the Service may have over settlement of litigation. Consistent with this view, 39 U.S.C. § 2603 (giving the Postal Service authority to settle certain tort claims) may be seen as creating an exception to an exception.

6. A broad reading of § 2008(c) is also consistent with the terms of 39 U.S.C. § 401(8).

7. See New York v. New Jersey, 256 U.S. 296, 308, 41 S.Ct. 492, 65 L.Ed. 937 (1921), The Confiscation Cases, 7 Wall. (74 U.S.) 454, 457-458, 19 L.Ed. 196 (1868), Castell v. United States, 98 F.2d 88, 91 (2d Cir. 1938) ; Halbach v. Markham, 106 F.Supp. 475, 480 (D.N.J.1952) ; cf. FTC v. Claire Furnace Co., 274 U.S. 160, 174, 47 S.Ct. 553, 71 L.Ed. 978 (1927) ; FTC v. Guignon, 390 F.2d 323, 330 (8th Cir. 1968). These

cases may establish the proposition that where the Attorney General has supervision and control over a particular litigation he is empowered to settle that litigation. But we have had no case pointed out to us, nor have we been able to discover any, where it has been held that the Attorney General can block a settlement agreed to by a government agency involved in that litigation. Such an action on the part of the Attorney General would not further the policy interest in giving him power to screen out cases which should not burden the federal courts. See FTC v. Claire Furnace Co., supra. And, at least in some circumstances, it would violate the spirit of S & E Contractors, Inc. v. United States, 406 U.S. 1, 13, 92 S. Ct. 1411, 31 L.Ed.2d 658 (1972).

8. While the general authority of the Postal Service to independently set its own employment policies is subject to a number of exceptions, notably as regards veteran preference, 39 U.S.C. § 1005(a)(2), and adverse terminations and suspensions, 39 U.S.C. § 1005(a)(1), none of these exceptions encompass the present case either directly or by necessary implication.

**818**

partment of Justice veto power when incident to litigation.[9] Whatever the general power of the Attorney General to supervise litigation, including settlement thereof, we think that here, in light of the provisions and purposes of the Postal Reorganization Act, sections 409, 411 and 2008(c) of that Act mean that an exception to this general rule is "authorized by law".

Affirmed.

---

9. FTC v. Guignon, 390 F.2d 323 (8th Cir. 1968), because it did not deal with the power of the Justice Department to block settlement of litigation by the agency involved, and because it was concerned with a statutory scheme under the Federal Trade Commission Act quite distinct from that we deal with today, is readily distinguishable.

