# Status of the United States Postal Service as an "Executive Agency" Under Executive Order No. 12,250

In light of the statutory independence given the United States Postal Service (Service) and its officers, Executive Order No. 12,250 should not be construed to include the Service as an "Executive agency" subject to the Attorney General's nondiscrimination coordination authority.

July 29, 1981

## MEMORANDUM OPINION FOR THE ACTING ASSISTANT ATTORNEY GENERAL, CIVIL RIGHTS DIVISION

You have requested the views of this Office with respect to the question whether the United States Postal Service (Service) is an "Executive agency" within the meaning of Executive Order No. 12,250, 45 Fed. Reg. 72,995 (1980). For the reasons that follow, we believe that the order should not be construed to include the Postal Service as such an agency, notwithstanding the considerable authority of the President and the Attorney General over the litigating activities of the Service.

Under 42 U.S.C. § 2000d–1 and 20 U.S.C. § 1682, the President has been granted broad powers to approve the rules, regulations, and orders of general applicability relating to racial, sex, and other forms of discrimination. Executive Order No. 12,250 delegates these powers to the Attorney General. At the same time, the order grants the Attorney General authority to "coordinate the implementation and enforcement by Executive agencies of various nondiscrimination provisions of" a variety of laws banning discrimination on grounds of race, color, national origin, handicap, religion, or sex. The Attorney General is required, for example, to develop standards and procedures for taking enforcement actions and conducting investigations; to promulgate guidelines for establishing time limits on enforcement activities; to implement a schedule for review of the agencies' regulations; to establish guidelines for development of consistent recordkeeping and reporting requirements and for sharing of information; and to initiate cooperative programs between and among agencies in order to improve the coordination of the covered laws. Under the order, each executive agency is required to cooperate with the Attorney General in performing its functions by furnishing requested information and submitting plans for

the implementation of its responsibilities under the order. The order offers no definition of the "Executive agencies" that it covers.

This Office has recently discussed the "uneasy and unresolved tension between the dependent and independent aspects of the new [Postal] Service," *Leonard* v. *United States Postal Service,* 489 F.2d 814, 815 (1st Cir. 1974). *See* Memorandum of June 15, 1979, for the Assistant Attorney General, Civil Division, from Leon Ulman, Deputy Assistant Attorney General, Office of Legal Counsel.[1] We summarize that discussion here. After passage of the Postal Reorganization Act of 1970 (Act), 39 U.S.C. § 101 *et seq.,* the Postal Service was categorized as "an independent establishment of the executive branch of the Government. . . ." 39 U.S.C. § 201. The Act provides for a bipartisan Board of Governors who are removable by the President only for cause. § 202(c). Moreover, the Postmaster General and the Deputy Postmaster General are appointed and removable, not by the President, but by the Board of Governors. § 202(c), (d).

An agency directed by a board of governors and by chief executive officers who are not freely removable by the President is not "within" the Executive Branch of the government as that term is ordinarily understood. After *Myers* v. *United States,* 272 U.S. 52 (1926), it is plain that purely executive officers must be appointed by the President, and removable at his will. Under the Act, by contrast, Congress did not intend Postal Service officials to have that status. The relevant committee report states that the Service was to be removed from the President's Cabinet and from the ordinary political process, *see* H.R. Rep. No. 1104, 91st Cong., 2d Sess. 6, 12–13 (1970), and that the Board was to act as a buffer between management of the Service and the possible influence of partisan politics. In this way, the statute was designed to remove "the day-to-day management of the Postal Service from both Presidential and Congressional areas of concern while still leaving the Postal Service subject to [their] broad policy guidance." *Id.* at 13.

For purposes of the present inquiry, we need not say whether the President possesses the constitutional or statutory authority to subject to the control of the Attorney General the activities of the Postal Service in the nondiscrimination area. There is a substantial argument that such control would constitute "broad policy guidance" of the sort permitted by the Act. The question here, however, is not one of presidential authority, but of the intent underlying the order.[2]

In light of the peculiar status of the Postal Service, we do not believe that the Service should be understood to be included as an "Executive agency" within the meaning of the order. The Service is not defined as such an agency under the Administrative Procedure Act, *see* 5 U.S.C.

---

[1] In that memorandum, we concluded that, as a general matter, the Attorney General has the power to control litigation involving the Service

[2] Nor need we say which of the statutes covered by the order is applicable to the Postal Service.

§§ 103-105. Moreover, both the Act and its history reveal that Congress intended to grant the Service at least some measure of insulation from control by the President and to place the Service in a separate category from the conventional executive departments. *See Leonard* v. *United States Postal Service,* 489 F.2d 814. In light of that unequivocal intent, we believe that, if the President intended to include the Postal Service under an executive order granting both substantive and procedural authority to the Attorney General, an explicit statement to that effect would ordinarily be expected.[3] Since Executive Order No. 12,250 contains no such explicit statement, but instead refers to "Executive agencies" generally, we interpret the order as not subjecting the Service to the Attorney General's coordination authority.

LARRY L. SIMMS
*Deputy Assistant Attorney General*
*Office of Legal Counsel*

---

[3] We note in addition that in a memorandum on Executive Order No. 12,250 prepared before the order was signed or drafted in final form, this Office referred to the difficult legal problems that would arise if the order were applied to the so-called "independent" agencies. We have understood the failure to respond to this concern as an indication that the independent agencies were not intended to be included.

241