Mitchell K. **FRIEDLANDER**, et al., Plaintiffs,

v.

**UNITED STATES POSTAL SERVICE, Defendant.**

Civ. A. No. 86–1990.

United States District Court, District of Columbia.

March 23, 1987.

---

Dale B. Hinson and Robert G. Season-wein, Washington, D.C., for plaintiffs.

Thomas Millet and Robert C. Chestnut, Dept. of Justice, Washington, D.C., for defendant.

### MEMORANDUM

GASCH, District Judge.

## I. INTRODUCTION

Defendant's motion to dismiss is in response to a complaint alleging that two cease and desist orders entered by the United States Postal Service ("USPS") violated the principle of separation of powers, the first amendment and the exclusive jurisdiction of the Federal Trade Commission ("FTC") and the Food and Drug Administration ("FDA"). Claiming that no adequate remedy at law exists, plaintiffs' complaint requests declaratory judgment and injunctive relief. The primary issue before the Court is whether the USPS is a business enterprise wholly independent of the executive branch of government and thereby unconstitutionally functions as an enforcement and adjudicatory body.

## II. BACKGROUND

### A. *Factual Setting*

Plaintiffs in this action consist of Mitchell K. Friedlander, a resident of Fort Lauderdale, Florida, and four corporations organized under Florida law and controlled by Friedlander.[1] Between July and November of 1984, the Consumer Protection Division of the USPS filed numerous complaints against plaintiffs charging mail fraud. These complaints alleged that plaintiffs had solicited consumers through the mail with false representations about weight loss and breast enlargement products.[2]

After extensive hearings, with testimony heard from numerous medical experts, the Postal Service determined in September, 1985, that plaintiffs had used false representations to defraud consumers about the three weight loss products and three breast enlargement products. *See* Defendant's Attachments 1–3. A brief discussion of some of these advertisements and their featured products is warranted.

Two of the weight loss tablets promoted by plaintiffs, Intercal-sx and Metabolite–2050, consist solely of cyanopsis tetragonolobus, the Latin name for guar. When guar is mixed with water, it swells and becomes gelatinous; it is often used to thicken ice cream, salad dressings, skin

1. The parent corporation is Intra-Medic Formulations, Inc. The three remaining corporations are wholly owned subsidiaries of Intra-Medic; these are: Customer Service Distribution Center, Inc., Connor-Freeman Laboratories, Inc. and The Robertson-Taylor Company.

2. The names of the three weight loss products are "Metabolite 2050," "Intercal sx," and "Anorex CCK." Also involved are three breast enlargement products: "Macrocell-D58," "Mamralin-Bx2," and "Breast Formula XP–39." *See* Defendant's Attachments 1–3.

creams and lotions. *See* Defendant's Attachment 1 at 32 (Postal Service Decision dated Sept. 10, 1985). In sensational terms, plaintiffs advertised that these guar tablets caused significant weight loss in virtually all users, that dieting and exercise were unnecessary, that ingestion of the tablets prevented foods from converting to stored fat and that the weight loss claims were supported by scientifically sound clinical studies. *Id.* at 4. The Acting Judicial Officer for the USPS conducted hearings and found that all of these promotional representations were false and that plaintiffs were implementing a scheme for obtaining money through mail fraud within the meaning of 39 U.S.C. § 3005 (1978 & 1986 Supp.). The lengthy Postal Decision of September 10, 1985, noted the existence of unconfirmed reports suggesting that guar caused satiety in some obese individuals but that, otherwise, the substance far from fulfilled the "exaggerated claims" of plaintiffs.[3]

Similarly, after another round of hearings, the Postal Service concluded that plaintiffs' breast enlargement products were fraudulently advertised to the public through the mails. These products were topically applied lotions. In the Postal Decision dated September 30, 1985, the Judicial Officer found that, contrary to plaintiffs' advertisements, no topical cream will cause a woman's breasts to become larger. Any change in breast size is due solely to complex hormonal activity, such as that during menstruation and pregnancy, or is the result of surgical implantation. The active ingredient in these lotions was niacin which, when applied topically, causes a blush by stimulating blood flow to surface capillaries. *See* Defendant's Attachment 3. For both the weight loss pills and breast enlargement lotions, the USPS issued cease and desist orders preventing plaintiffs from making further false representations unless substantiated by reliable and competent scientific evidence.[4]

Plaintiffs did not appeal these cease and desist orders. On July 18, 1986, however, plaintiffs filed the instant action charging that the entry of the cease and desist orders by the Postal Service violated separation of powers principles, the first amendment and the exclusive jurisdiction of the FTC and the FDA. *See* Complaint at ¶¶ 22, 33 and 35. As plaintiffs claim to have no adequate remedy at law, their complaint requests declaratory judgment that 39 U.S.C. § 3005 is unconstitutional. The complaint further demands that the Postal Service be enjoined from enforcing the cease and desist orders against plaintiffs or from restraining plaintiffs' ability to advertise and sell food, drugs, cosmetics or devices through the United States mail. *See* Complaint at 13–14.

## B. *Constitutional and Statutory Scheme*

The Constitution expressly grants Congress the power to enact all laws it deems necessary and proper to establish post offices and post roads. United States Constitution, Article I, § 8, cl. 7. In 1970, Congress passed a comprehensive postal reform package known as the Postal Reorganization Act ("Act"), 39 U.S.C. § 101 *et seq.* The Act abolished the Post Office Depart-

---

**3.** Claims regarding the third weight loss product, Anorex-CCK were similar to those concerning Metabolite–2050 and Intercal-sx. The primary ingredients of Anorex-CCK are cholecystokinin ("CCK"), carboxymethylcellulose ("CBC") and bovine tissue. Judicial Officer Bernstein found that CCK was a fiber product having no effect on satiety or weight loss; that bovine tissue, from the cow or ox family, was unsupported by any evidence demonstrating it caused weight loss; and that CCK, a peptide hormone, will not produce satiety when orally administered. A feeling of satiety may be produced when large amounts of CCK are injected directly into the abdominal cavity. Judicial Officer Bernstein concluded, in a 42–page deci-

sion, that all of plaintiff's representations concerning the Anorex-CCK tablet were false and misleading. *See* Defendant's Attachment 2.

**4.** It should be noted that, in a separate action brought by the FTC, the U.S. District Court for the Southern District of Florida ordered a final judgment, after a six-day nonjury trial, enjoining plaintiffs from advertising that Intercal SX, Metabolite 2050 or Anorex-CCK will enable a person to lose weight without exercising or restricting caloric intake. *FTC v. Intramedic Formulations, Inc., et al.,* Case No. 85–2819 (S.D. Fla. Feb. 26, 1986).

ment which had administered the Nation's mails since 1789. *See* Act of 1789, ch. 16, 1 Stat. 70. In its place, the Act created the United States Postal Service as an "independent establishment of the executive branch of the Government of the United States...." 39 U.S.C. § 201 (1978).

Under the Act, the Postal Service is directed by a Board of Governors composed of eleven members. 39 U.S.C. § 202(a). Nine of the members, known as Governors, are appointed by the President, with the advice and consent of the Senate, for staggered nine year terms.[5] 39 U.S.C. § 202(a) & (b). The President may remove a Governor "for cause." 39 U.S.C. § 202(a). The nine Governors, in turn, appoint and have the power to remove the Postmaster General, the tenth Board member. 39 U.S.C. § 202(c). Finally, the nine Governors and the Postmaster General appoint and have the power to remove the Deputy Postmaster General, the eleventh member.[6] 39 U.S.C. § 202(d). Under the Act, the Board, as the managing body of the Postal Service, has a wide array of general powers such as the authority to enter into contracts, to acquire property, to spend money and to sue or be sued. *See* 39 U.S.C. § 401.

By reorganizing the postal system, Congress' expressed purpose was to

Convert the Post Office Department into an independent establishment in the Executive Branch of the Government freed from direct political pressures and endowed with the means of building a truly superior mail service.

H.R.Rep. No. 1104, 91st Cong., 2d Sess. 1 (1970) U.S.Code Cong. & Admin.News 1970, pp. 3649, 3650 ("House Report"). Congress intended to protect the Postal Service from political pressures by mandating that the Postmaster General and the

Deputy Postmaster General serve at the pleasure of the presidentially appointed Board members. *Id.* at 13, U.S.Code Cong. & Admin.News 1970, p. 3661. In sum, Congress explained that the day-to-day management of the Postal Service would be removed from congressional and presidential areas of concern but "broad policy guidance" would not be so removed. *Id.*

The terms of the Act clearly provide that the Postal Service is empowered "to sue and be sued in its official name." 39 U.S.C. § 401(1). *See also Franchise Tax Board of California v. USPS,* 467 U.S. 512, 519, 104 S.Ct. 2549, 2553, 81 L.Ed.2d 446 (1984) (under Reorganization Act, Congress waived sovereign immunity of Postal Service). The Act, however, further provides that the Department of Justice ("DOJ") exclusively controls the legal representation of the Postal Service:

The Department of Justice shall furnish, under section 411 of this title [39 U.S.C. § 411], the Postal Service such legal representation as it may require, but with prior consent of the Attorney General the Postal Service may employ attorneys by contract or otherwise to conduct litigation brought by or against the Postal Service or its officers or employees in matter affecting the Postal Service.

39 U.S.C. § 409(d); *see also* House Report at 26. The Court notes that the Postal Service may contract for attorneys outside of the DOJ only with the prior consent of the Attorney General.[7]

Additionally, the Postal Service may institute administrative proceedings to investigate whether "any person is engaged in conducting a scheme or device for obtaining money or property through the mail by means of false representations...." 39

---

5. Not more than five of the Governors may be "adherents of the same political party." 39 U.S.C. § 202(a).

6. The nine Governors affix the pay and term of service of the Postmaster General. 39 U.S.C. § 202(c). The Governors and the Postmaster General determine the pay and term of service for the Deputy Postmaster General. 39 U.S.C. § 202(d).

7. One court has held that the Postal Service may settle litigation without the Attorney General's prior approval but only where settlement involves an issue of purely internal postal policy. *See Leonard v. USPS,* 489 F.2d 814 (1st Cir.1974) (relying on 39 U.S.C. § 2008(c) to grant to USPS authority over settlement of claims).

U.S.C. § 3005(a); *see also* 39 C.F.R. § 952 (1986) (procedures for § 3005 hearings). Should the USPS establish a section 3005 violation, it is empowered by statute to issue a "cease and desist" order preventing use of the mails in furtherance of a fraudulent scheme.[8] 39 U.S.C. § 3005(a)(3) (1986 Supp.). Moreover, the Postal Service, through the DOJ, may seek a temporary restraining order in federal district court to detain the incoming mail of a person suspected of violating section 3005 until the conclusion of any administrative proceedings and appeal therefrom. 39 U.S.C. § 3007(a).

The USPS cease and desist orders are not self-enforcing. Under section 3012 of the Act, any person evading the effect of a section 3005 order may be subject to civil penalties in the amount of $10,000 for each day the postal system is used to further a fraudulent scheme. 39 U.S.C. § 3012(a)(1) (1986 Supp.). The DOJ may commence a civil action on behalf of the Postal Service to enforce these penalties. 39 U.S.C. § 3012(b)(1). Alternatively, an individual may avoid the risk of a section 3012 suit by filing in federal district court an immediate appeal from the entry of a section 3005 cease and desist order. *See* 39 U.S.C. § 3012(d); [9] *see also* 39 U.S.C. § 409(a) (federal district courts have original jurisdiction over actions against Postal Service); *Baslee Products Corp. v. USPS*, 356 F.Supp. 841, 843 (D.N.J.1973) (district court has jurisdiction under § 409(a) in suit to enjoin § 3005 stop order issued against plaintiff for false advertising).

## III. DISCUSSION

### A. *Separation of Powers Claim*

 The primary issue before the Court is whether the Postal Service is within the executive branch of government. Plain-

tiffs assert, in their complaint and opposition brief, that the prosecutorial and adjudicatory powers vested in the Postal Service by 39 U.S.C. § 3005 are "totally at odds with the separation of powers doctrine." Plaintiffs' Opposition at 4. Although not clearly set forward, the gravamen of plaintiffs' argument appears to be that the Postal Service is an "independent business entity," "hermetically sealed" from supervision by either the executive or legislative branches. *See* Plaintiffs' Opposition at 13–14. According to plaintiffs, the U.S. Postal Service has no more legal right to issue cease and desist orders than would private companies such as Federal Express or United Parcel Service. *Id.* at 3. In sum, plaintiffs argue that Congress impermissibly has usurped executory powers, belonging exclusively to the executive branch, and delegated such powers to a private business.

In support of this argument, plaintiffs point to a few statutory and regulatory provisions concerning the organization of the Postal Service. First, plaintiffs claim that the Postmaster General has "absolute and final control" over section 3005 proceedings, citing to 39 C.F.R. § 952 *et seq.* (1986) (rules of practice in § 3005 proceedings). Next, plaintiffs note that the Postmaster General may not be appointed or removed by the President. *See* 39 U.S.C. § 202(c); *see also Carlin v. McKean*, Civil Action No. 86–1811, slip op. at 16 (D.D.C. July 18, 1986) (Pratt, J.) (Postal Service Governors have unrestricted power of appointment and removal of Postmaster General). Additionally, plaintiffs refute that the DOJ, as an entity of the executive branch, has any supervision or control over section 3005 proceedings. From the above, plaintiffs conclude that since only the President may "take care

---

8. The Postal Service may also, under § 3005, direct the Postmaster to return to sender all mail connected with the fraudulent scheme (with prior notice to sender); the Postal Service may also refuse payment on postal orders drawn to the order of the individual or business violating § 3005. 39 U.S.C. § 3005(a)(1) & (2) (1978 & 1986 Supp.).

9. Section 3012(d) states: "In any proceeding at any time under this section, the defendant shall be entitled as a defense or counterclaim to seek judicial review, if not already had, ... of the order issued under Section 3005 of this title." At oral argument, counsel for defendant indicated that the effects of a § 3005 order, such as return of mail, would be stayed pending a defendant's appeal.

that the laws are faithfully executed" under the Constitution, Art. II, § 2, cl. 2, then the Postal Service may not constitutionally "enforce" 39 U.S.C. §§ 3005, 3007 or 3012.

For numerous reasons, the Court finds that the Postal Service is part of the executive branch of the United States Government. The Reorganization Act did not "divorce" the Postal Service from Government, it merely accorded it qualified independence with respect to its management and financial functions. Congress unequivocally declared the governmental status of the USPS in the first sections of the Act:

> The United States Postal Service shall be operated as a basic and fundamental service *provided* to the people *by the Government of the United States,* authorized by the Constitution, created by Act of Congress, and supported by the people.

39 U.S.C. § 101(a) (emphasis added). This section is followed by section 201 which establishes the Postal Service as "an independent establishment of the *executive branch of the Government of the United States.*" 39 U.S.C. § 201 (emphasis added). The only rational conclusion that can be drawn from these sections is that the Postal Service is a governmental entity of the executive branch. The services it provides are services of the U.S. Government.

This Court previously reached this conclusion in *Hill, Christopher and Phillips v. USPS,* 535 F.Supp. 804 (D.D.C.1982). That case involved a different issue, the Federal Tax Lien Act. The Court turned to the Postal Reorganization Act to determine the question of whether the Postal Service indeed was an entity of Government and therefore within the scope of the Lien Act:

> The provisions of the Postal Act, therefore, accorded a considerable degree of independent authority to the Postal Service with respect to its managerial and financial functions. This extended to such areas as entering contracts, settling

claims, setting postal rates, raising funds, and constructing, holding, leasing and maintaining property. However, the managerial and financial independence which was granted to the Postal Service by no means mandated that the Postal Service was to be divorced from the United States Government.... Congress apparently viewed any independence as qualified, since when it spoke of the independence of the Postal Service, it was at the same time careful to reiterate the status of the Postal Service as an establishment of the Government of the United States.

*Id.* at 812 (footnote omitted).

Moreover, as the Court noted in the *Hill, Christopher* case, various operative sections of the Act hardly suggest that the Postal Service is endowed with complete independence. Rather, many sections of the Act temper any independence with substantial ties to government. For example, although the Act permits the USPS to sue and be sued, section 409(d) mandates that the DOJ "shall furnish" legal representation to the Postal Service. The Act considers the Postal Service as the United States for the purposes of the Federal Tort Claims Act, section 409(c), and for service of process, section 409(b). The Act creates a "Postal Service Fund" to carry out the functions and powers of the Postal Service, yet this fund is established in the Treasury of the United States. 39 U.S.C. § 2003. The Postal Service is authorized to borrow money, section 2005, but section 2006(c) indicates that USPS obligations are obligations of the United States. Finally, it is hard to imagine the Postal Service as a nongovernmental "business" in view of its annual submission of a budget program to the Office of Management and Budget, a budget which is reviewed by the President and eventually transmitted to Congress. 39 U.S.C. § 2009 (1978 & 1986 Supp.).[10]

---

10. These are by no means the only provisions of the Act which demonstrate that the Postal Service is an entity within the United States Government. The Court also notes that: the Postal Service may exercise the right of eminent domain "in the name of the United States," 39 U.S.C. § 401(9); it may negotiate international postal agreements with approval from the President, 39 U.S.C. § 407(a); it has the priority of the United States with respect to the payment of debts out of bankrupt estates, 39 U.S.C. § 401(9); and, the members of its Board of

In sum, the Court rejects plaintiffs' argument that the Postal Service is in any way "hermetically sealed" from government. Such a suggestion is contrary to a plain reading of the Postal Reorganization Act.[11] Moreover, it defies Congress' stated objectives in the legislative history. *See* H.R. Rep. No. 1104, 91st Cong., 2d Sess. 1 (1970), U.S.Code Cong. & Admin.News 1970, p. 3650. Congress did not intend to create a private business, rather, it desired a more efficient government agency. Other courts have assumed without question that the Postal Service is a governmental entity within the executive branch. *See United States Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 122, 101 S.Ct. 2676, 2681, 69 L.Ed.2d 517 (1980) (Postal Reorganization Act "transformed the Post Office Department into a Government-owned corporation called the United States Postal Service"); *Standard Oil Div., American Oil Co. v. Starks,* 528 F.2d 201, 202 (7th Cir.1975) (USPS was made an independent establishment of executive branch, operating in "business-like way"); *Prefab Products v. USPS,* 600 F.Supp. 89, 91 (S.D.Fla.1984) (postal reorganization did not remove Postal Service from federal government, but made it "independent establishment within the executive branch"); *United Parcel Service v. USPS,* 455 F.Supp. 857, 859 (E.D.Pa. 1978) (USPS established as an independent unit of the executive branch), *aff'd,* 604 F.2d 1370 (1979), *cert. denied,* 466 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980); *Detroit Window Cleaners Local 139 Ins. Fund v. Griffin,* 345 F.Supp. 1343, 1344 (E.D.Mich.1972) (activities of both USPS and old Post Office Department are governmental in nature; USPS, as part of executive branch, was established to perform existing governmental function in a more efficient manner).

Plaintiffs appear to misunderstand particular provisions of the Reorganization Act. First, plaintiffs contend that since the Postmaster General may only be removed by the Postal Board of Governors and not the President, citing *Carlin v. McKean, supra,* then the entire Postal Service lacks presidential supervision. This argument is flawed. It is the Board of Governors, not the Postmaster General that ultimately directs and controls the Postal Service. *See* 39 U.S.C. §§ 202(a), 205(a); *see also Governors of the U.S. Postal Service v. United States Postal Rate Comm'n,* 654 F.2d 108, 114 (D.C.Cir.1981) (Congress intended "to vest in the Board of Governors exclusive authority to manage the Postal Service"); *accord Newsweek, Inc. v. United States Postal Service,* 663 F.2d 1186, 1203 (2d Cir.1981), *aff'd,* 462 U.S. 810, 103 S.Ct. 2717, 77 L.Ed.2d 195 (1983). Since the President is responsible for appointing and removing individual Board members, the President thus has direct control over the Postal Service's governing body. *See* 39 U.S.C. § 202(a). Moreover, since the Board may remove the Postmaster General "on the basis of any or no information and for a good reason, bad reason or no reason at all," it may also be said that the President effectively controls the Postmaster General as well. *See Carlin,* slip op. at 10.

Second, plaintiffs assert that the Attorney General, an executive branch officer, has no control over mail fraud litigation. Plaintiffs dramatically insist that defendant's claim of control over such litigation may "charitably" be described as "nonsense" and "beyond the realm of rational debate." *See* Plaintiffs' Opposition at 10–11. The Act at issue addresses the topic of Postal Service litigation in one section, 39 U.S.C. § 409(d). That provision explicitly states that the "Department of Justice shall furnish ... the Postal Service such legal representation as it may require." *See also* House Report at 26. The USPS may employ its own attorneys, *but only*

---

Governors are officers of the United States Government, 39 U.S.C. § 205(d).

**11.** As one court has noted, it is reasonable to assume that in expressing its intent through the Postal Reorganization Act, Congress sought clarity, not obfuscation. Unless the contrary appears, "Congress therefore used statutory words in their usual sense and with the meaning commonly attributed to them." *United Parcel Serv. v. USPS,* 455 F.Supp. 857, 863 (E.D.Pa.1978), *aff'd,* 604 F.2d 1370 (1979), *cert. denied,* 466 U.S. 957, 100 S.Ct. 2929, 64 L.Ed.2d 815 (1980).

with the prior consent of the Attorney General. *Id.* Section 204 of the Act, which creates positions such as a General Counsel and a Judicial Officer, in no way preempts the DOJ's stated authority over Postal Service litigation.[12]

Furthermore, with regard to section 3005 cease and desist orders in particular, the Postal Service itself cannot enforce the order. The order may only be enforced through federal court litigation instituted by the DOJ on behalf of the Postal Service and pursuant to 39 U.S.C. § 3012(b). Section 3012 states that any civil action to impose civil penalties for evasion of cease and desist orders must be brought "under the provision of section 409(d) of this title ...," *i.e.,* with DOJ legal representation or supervision.

In conclusion, the Court finds that plaintiffs have not made out a claim that the United States Postal Service is an "independent business entity" which is unconstitutionally vested with executory and adjudicatory powers. The Postal Service is firmly seated in the executive branch of the United States Government, it is not a private corporation engaged in the business of moving mail. As noted by Justice (now Chief Justice) Rehnquist, the development of a postal system historically was integral to the development of this Nation, ever since the appointment of Benjamin Franklin as Deputy Postmaster General for the American Colonies in 1753. In Justice Rehnquist's words:

> The Post Office played a vital yet largely unappreciated role in the development of our new Nation. Stagecoach trails which were improved by the Government to become post roads quickly became arteries of commerce. Mail contracts were of great assistance to the early development of new means of transportation such as canals, railroads, and eventually airlines.... During this developing stage, the Post Office was to many citizens situated across the country the most visible symbol of national unity.

*United States Postal Service v. Council of Greenburgh Civic Associations,* 453 U.S. 114, 121–22, 101 S.Ct. 2676, 2681, 69 L.Ed.2d 517 (1981). It hardly seems likely that, in the Postal Reorganization Act, Congress intended to undo over two hundred years of American history by demoting a "national symbol" to the mere status of a private commercial venture.

### B. *Remaining Claims*

Plaintiffs' complaint appears to raise two additional causes of action: (1) that their first amendment right to freedom of speech has been violated by the USPS cease and desist orders; and (2) that the FTC and FDA have exclusive jurisdiction to initiate fraud proceedings against vendors and advertisers of drug products. Defendant addressed these two claims in its motion to dismiss. Plaintiffs, however, failed to include any substantive discussion of the two claims in their opposition brief, focusing instead on the separation of powers argument.

■ Assuming plaintiffs have not abandoned any claims, the Court dismisses these remaining causes of action. First, the Supreme Court has held that advertisers have no constitutional right to disseminate false and misleading information. In *Donaldson v. Read Magazine, Inc.,* 333 U.S. 178, 191, 68 S.Ct. 591, 598, 92 L.Ed. 628 (1948), the Court upheld the constitutionality of fraud orders issued by the Post-

---

12. The Court notes that no case challenging § 3005 stop orders was found where the DOJ did *not* represent the Postal Service. *See, e.g., Institute for Weight Control v. Klassen,* 348 F.Supp. 1304 (D.N.J.1972) (USPS represented by DOJ in appeal of § 3005 order), *aff'd without op.,* 474 F.2d 1338 (3d Cir.1973); *Mark Eden v. Lee,* 433 F.2d 1077 (9th Cir.1970) (same); *Atlas Publishing, Inc. v. USPS,* 602 F.Supp. 407 (S.D. Fla.1983) (same). The defendant has offered recently a notice of filing attaching three actions, separate from the case at bar, involving § 3007 mail fraud proceedings against these same plaintiffs. In *all* of these proceedings, the Postal Service was represented by the U.S. Department of Justice. *See USPS v. Intra-Medic Formulations, Inc., et al.,* Civ. Action No. 85–0023–L–B (W.D.Ky. Jan. 14, 1985); *USPS v. Robertson-Taylor Co., et al.,* Civ. Action No. 84–6935 (S.D.Fla. Nov. 27, 1984); *USPS v. W.G. Charles Co.,* Civ. Action No. 84–C–5863 (N.D.Ill. Aug. 31, 1984) (Defendant's Attachments 1, 2 & 3 to Notice of Filing).

master General. The Court, in that case, explained that the constitutional guarantees of free speech do not include the use of mails for "swindling schemes" which deceive the public. *Id. See also Hollywood House International, Inc. v. Klassen,* 508 F.2d 1276, 1277 (9th Cir.1974) (fraudulent commercial appeals are not a protected form of speech; 39 U.S.C. § 3005 is constitutional); *Lynch v. Blount,* 330 F.Supp. 689, 694–95 (S.D.N.Y.1971), *aff'd,* 404 U.S. 1007, 92 S.Ct. 673, 30 L.Ed.2d 656 (1972).

■ Lastly, there is nothing in the Postal Reorganization Act which indicates that its provisions are in any way preempted by FTC or FDA jurisdiction. Besides, the District of Columbia has long held that where more than one regulatory system is applicable to a certain subject matter, both systems are to be given effect and reconciled. *Commonwealth of Pennsylvania v. ICC,* 561 F.2d 278, 292 (D.C.Cir.1977); *see Warner-Lambert Company v. FTC,* 361 F.Supp. 948, 952 (D.D.C.1973) (same issues and parties may be proceeded against simultaneously by more than one agency) (Pratt, J.). In the instant action, the existence of FDA or FTC jurisdiction over this same matter does not prevent the Postal Service from initiating section 3005 proceedings against companies using the mails in furtherance of a fraudulent scheme.

## IV. CONCLUSION

For the foregoing reasons, the Court grants defendant's motion to dismiss on all counts, pursuant to Federal Rule of Civil Procedure 12(b)(6). As a matter of law, plaintiffs have not set forth a claim upon which declaratory or injunctive relief can be granted. *See Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957).