114 F.3d 668
 74 Fair Empl.Prac.Cas. (BNA) 160,
70 Empl. Prac. Dec. P 44,760
Mitzi BAKER, Plaintiff-Appellee/Cross-Appellant,
v.
Marvin T. RUNYON, Postmaster General of the United States,
Defendant-Appellant/Cross-Appellee.
 Nos. 96-3307, 96-3514.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 11, 1997.
Decided June 12, 1997.
 
 Stanley L. Hill, Robert D. Whitfield (argued), Hill & Associates, Chicago, IL, for Plaintiff-Appellee.
 Joseph M. Ferguson, Office of the United States Attorney, Civil Division, Appellate Section, Matthew M. Collette (argued), Marleigh D. Dover, Department of Justice, Civil Division, Appellate Section, Washington, DC, Thomas P. Walsh, Office of the United States Attorney, Civil Division, Chicago, IL, for Defendant-Appellant.
 Before CUDAHY, FLAUM, and ROVNER, Circuit Judges.
 FLAUM, Circuit Judge.
 
 
 1
 Plaintiff-appellee Mitzi Baker brought suit under Title VII of the Civil Rights Act of 1964, as amended in 1991 ("the Act"), seeking both compensatory and punitive damages for sexual harassment she allegedly suffered while employed by the United States Postal Service. Defendant-appellant Marvin T. Runyon, the Postmaster General of the United States, moved to strike Baker's claim for punitive damages on the ground that the United States Postal Service is a government agency and is therefore exempt from punitive damages under Title VII. As codified at 42 U.S.C. § 1981a(b)(1), Title VII provides that parties may recover punitive damages "against a respondent (other than a government, government agency or political subdivision) ...." (emphasis added). The issue presented by this case, then, is whether the Postal Service is a "government agency" for purposes of section 1981a. The district court concluded that the Postal Service was not. Challenging this determination, the Postmaster General brings this appeal. Because we conclude that the Postal Service is a government agency for purposes of section 1981a, we reverse the judgment of the district court awarding Baker punitive damages.[1]
 
 I.
 
 2
 Congress, in enacting section 1981a, exempted all government agencies from the Act's punitive damage provision, with no articulated exceptions. Because Baker has conceded that the Postal Service is a "government agency," there would therefore appear to be little for this court to decide. Not surprisingly, Baker does not view this case as quite that simple. It is her contention, a view shared by the district court, that it can be inferred from Congress' historical treatment of the Postal Service as a quasi-commercial entity, from Congress' waiver of the Service's sovereign immunity, and from the legislative history of the Civil Rights Act of 1991, that Congress did not intend to exempt the Postal Service from punitive damages. We cannot agree that this is an appropriate inference to draw.
 
 
 3
 Baker faces an uphill battle in arguing that Congress intended to subject the Postal Service to punitive damages. She is asking this court to read into the Act an exception to Congress' blanket exemption, despite the absence of any textual support for such an exclusion, because, according to Baker, this is what Congress intended. It is, however, axiomatic that "the plain language of a statute is the most reliable indicator of congressional intent." Time Warner Cable v. Doyle, 66 F.3d 867, 876 (7th Cir.1995), cert. denied, Doyle v. Time Warner Cable, --- U.S. ----, 116 S.Ct. 974, 133 L.Ed.2d 894 (1996); see also Director, OWCP v. Forsyth Energy, Inc., 666 F.2d 1104, 1107 (7th Cir.1981). "[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there." Connecticut Nat'l Bank v. Germain, 503 U.S. 249, 253-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). We therefore presume that Congress would have said that all government agencies, except the Postal Service, are exempt from punitive damages, if this is what it intended.
 
 
 4
 This presumption that a statute means what it says is a difficult one to overcome. When the words of a statute are unambiguous, ordinarily the "judicial inquiry is complete." Id. at 254, 112 S.Ct. at 1149-50; see also In the Matter of Lifschultz Fast Freight Corp., 63 F.3d 621, 628 (7th Cir.1995) (plain language of statute ordinarily conclusive). "The statutory language should be conclusive except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters ... [or] lead to absurd results...." Time Warner Cable, 66 F.3d at 876 (citation omitted); see also Grzan v. Charter Hosp. of Northwest Ind., 104 F.3d 116, 122 (7th Cir.1997) (legislative history of statute examined "only for the limited purpose of determining whether it reflects a clearly expressed legislative intent to the contrary"). This is not such a case. In mounting her attack on the plain meaning of section 1981a, Baker has produced no evidence of a clear intent by Congress to saddle the Postal Service, despite its governmental nature, with judgments for punitive damages. Nor has she demonstrated that exempting the Service from punitive damage awards is "demonstrably at odds" with the goals of Title VII. As discussed below, the inferences Baker would draw from the various statutes and excerpts of legislative history cannot counter section 1981a's clear language.
 
 II.
 
 5
 We first address Baker's contention that Congress, because it intended the Postal Service to operate in a manner similar to a commercial entity, must have intended to subject the Service to punitive damages. We do not believe that it is possible to make the leap in logic Baker suggests. The Postal Service may be run in a manner similar to a private commercial entity, but it is not a private commercial entity. See Silver v. United States Postal Service, 951 F.2d 1033, 1035 (9th Cir.1991) ("Congress could not have made its intention more clear that the Postal Service was to remain a part of the U.S. Government and to perform executive branch functions within the government."); Friedlander v. United States Postal Service, 658 F.Supp. 95, 101 (D.D.C.1987) ("Congress did not intend to create a private business, rather, it desired a more efficient government agency."). While this court, as well as the Supreme Court, has recognized the quasi-commercial nature of the Postal Service on several prior occasions, see, e.g., Loeffler v. Frank, 486 U.S. 549, 556, 108 S.Ct. 1965, 1969-70, 100 L.Ed.2d 549 (1988); Standard Oil Div., Am. Oil Co. v. Starks, 528 F.2d 201, 203 (7th Cir.1975), neither court has ever held that the Postal Service is anything other than a federal agency, see, e.g., United States v. Bardsley, 884 F.2d 1024, 1027-28 (7th Cir.1989) (false statements made to Postal Service are false statements to government agency); McGuinness v. United States Postal Service, 744 F.2d 1318, 1322-23 (7th Cir.1984) (only proper defendant in Title VII suit is head of agency). Congress may have vested the Postal Service with significant powers in order to increase its independence and autonomy, see Standard Oil, 528 F.2d at 202-03 (listing powers granted to Postal Service), but it also provided that the Postal Service is part of the executive branch of government, that its employees are part of the federal civil service, and that it possesses certain powers unique to governmental entities, such as the authority to exercise the power of eminent domain in the name of the United States. See 39 U.S.C. §§ 201, 1001(b) & 401(9).
 
 
 6
 Contrary to the suggestion of appellee, it would be illogical to assume that Congress, because it granted the Postal Service considerable autonomy, intended to grant the agency the status of a private actor. Congress knows how to create entities and confer upon them non-governmental status when it is Congress' intention to do so. In establishing Amtrak and the Corporation for Public Broadcasting, for example, Congress explicitly provided that they were not agencies or establishments of the United States Government. See 47 U.S.C. § 396(b) (providing that Corporation for Public Broadcasting "will not be an agency or establishment of the United States Government"); 45 U.S.C. § 541 (providing that Amtrak "will not be an agency or establishment of the United States Government") (repealed). Because Congress lodged the Postal Service within the federal government, the more logical inference is that it did not intend to subject the agency to punitive damages.
 
 
 7
 Baker next points to Congress' waiver of the Postal Service's sovereign immunity to support her assertion that Congress intended to subject the Postal Service to punitive damages. As is true of many other federal agencies, the Postal Service's charter contains a "sue-and-be-sued" clause that permits the Postal Service to be sued. The presence of this clause, however, does little to advance Baker's argument. If anything, it supports the position of the Postmaster General. This waiver of sovereign immunity is necessary solely because the Postal Service is a government agency. See Western Securities Co. v. Derwinski, 937 F.2d 1276, 1280 (7th Cir.1991) ("The 'sue or be sued' clause ... operates as the necessary waiver of sovereign immunity, permitting the suit to go forward notwithstanding that it is a suit against a federal agency.") (emphasis added).
 
 
 8
 That Congress has waived the Postal Service's sovereign immunity does not answer the question of whether plaintiff is entitled to punitive damages under section 1981a. As the Supreme Court has explained, in determining whether an individual can recover damages against the federal government, there are "two analytically distinct inquiries." Federal Deposit Ins. Corp. v. Meyer, 510 U.S. 471, 484, 114 S.Ct. 996, 1004, 127 L.Ed.2d 308 (1994) (internal quotation omitted). "The first inquiry is whether there has been a waiver of sovereign immunity. If there has been such a waiver, as in this case, the second inquiry comes into play--that is, whether the source of substantive law upon which the claimant relies provides an avenue for relief." Id. The magistrate judge in the instant case appears to have conflated these distinct inquiries. Although Congress has waived the Postal Service's sovereign immunity, the substantive law relied upon by appellee in the instant case, Title VII, provides that punitive damages are not available against governmental entities. Baker is therefore back where she started, arguing that the Postal Service is subject to punitive damages, despite the fact that it is a government agency.
 
 
 9
 Lastly, Baker points to nothing in Title VII itself to suggest that exempting the Postal Service from punitive damages would be "demonstrably at odds" with the purposes of that statute or "lead to absurd results." See Time Warner Cable, 66 F.3d at 876. While we would agree with appellee that it is clear from the legislative history of the amendments to the Civil Rights Act that Congress intended to enact stricter measures to deter discrimination, we do not agree that this necessarily leads to the conclusion that Congress intended to subject the Postal Service to punitive damage awards. If anything, the legislative history supports the opposite conclusion, that it was Congress' intention to exempt all federal agencies from such awards. See 137 CONG. REC. S29023 (daily ed. Oct. 30, 1991) (statement of Sen. Kennedy) ("Clearly, it was our intent that the limitation on punitive damages would apply to Federal, State and local governments."); 137 CONG. REC. H9527 (daily ed. Nov. 7, 1991) (interpretive memorandum of Rep. Edwards) (The damage provision "reinforces the clear statutory intent that compensatory damages are available against federal, state and local governmental defendants to the same extent that they are available against private sector defendants; punitive damages are not.").
 
 
 10
 As the Supreme Court has explained, punitive damages, when awarded against governmental entities, do not serve their intended deterrent purpose. See City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 266-67, 101 S.Ct. 2748, 2759-60, 69 L.Ed.2d 616 (1981). "[A]n award of punitive damages against a [government agency] 'punishes' only the taxpayers, who took no part in the commission of the tort." Id. at 267, 101 S.Ct. at 2759. Such awards are "in effect a windfall to a fully compensated plaintiff, and are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill." Id. This rationale applies with equal force to the Postal Service. Although the Postal Service is a "self-funding" entity, this is not to say that it is divorced from the United States Treasury. The Postal Service is self-funding only in the sense that Congress has appropriated to it all of the Postal Service's own revenues. 39 U.S.C. § 2401(a). It nevertheless is "operated as a basic and fundamental service provided to the people by the Government of the United States ... and supported by the people." Id. at § 101(a). Even in areas in which post offices are not self-sustaining, postal service is guaranteed. Id. at § 101(b). Any deficiency in these revenues would require either increased postal costs, a reduction in postal services, or, instead of raising the costs of stamps, additional appropriations by Congress. See id. at § 2401(b) (listing appropriations, in addition to Postal Service revenues, required to operate Service in various years).
 
 
 11
 For the foregoing reasons, the judgment of the district court awarding Baker punitive damages is
 
 
 12
 REVERSED.
 
 
 
 [1]
 In its order consolidating Baker's cross-appeal with the appeal of the Postmaster General, this court directed the parties to address whether Baker had established excusable neglect so as to permit her to bring her cross-appeal, despite its having been untimely filed. We need not consider this issue, however, because appellee has not argued the merits of her cross-appeal in her brief; these issues are deemed waived