Constance M. ROBINSON, Plaintiff,

v.

Marvin T. RUNYON, Postmaster General, United States Postal Service, Defendant.

No. 3:97CV7018.

United States District Court,
N.D. Ohio,
Western Division.

Dec. 8, 1997.

David W. Zoll, Michelle L. Kranz, Law Offices of David W. Zoll & Assoc., Toledo, OH, for Plaintiff.

Yolanda M. Pizarro, U.S. Postal Service Field Office Law Department, Philadelphia, PA, Ralph J. Lewis, Office of the U.S. Atty., Toledo, OH, for Defendant.

## Order

CARR, District Judge.

This is a disability discrimination case brought under the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, in which plaintiff claims that defendant failed to accommodate her disability as required by the Act. This Court has jurisdiction pursuant to 28 U .S.C. § 1331. Pending is defendant's motion for summary judgment (Doc. 18), to which plaintiff has responded. (Doc. 23). For the following reasons, defendant's motion shall be denied in part and granted in part.

### Background

Plaintiff was born with several congenital disorders, including absent right lung, single horseshoe kidney, absent uterus and scoliosis. When plaintiff began working as a clerk for the United States Postal Service (Postal Service) in May, 1986, the Postal Service knew about these disorders. In July, 1987, plaintiff qualified for a letter carrier position, and was transferred to Woodville, Ohio, where she worked until she was transferred to Port Clinton, Ohio, in September, 1993.

Plaintiff continued to work as a mail carrier in Port Clinton until October, 1994, when she began to feel ill. In early November, 1994, plaintiff's cardiologist determined that she was unable to return to her mail carrier position because of her cardiopulmonary and cervical disorders. The physician retained by the Postal Service agreed with this assessment, and added that plaintiff should not be considered for a nonsedentary position which would require heavy lifting. On February 2, 1995, the Manager of Post Office Operations told plaintiff that she would not be able to return to work and suggested that she apply for disability benefits.

Plaintiff, however, did not apply for disability, but rather, in March, 1995, requested transfer to a light duty assignment in Toledo or Port Clinton. Plaintiff was told that no positions were available at that time and that she should reapply in six months.

On November 24, 1995, the Postal Service terminated plaintiff, claiming that she had failed to meet the requirements of her job as a letter carrier, and advising her that she had the right to file a grievance under the Postal Service employees' collective bargaining agreement. Plaintiff instituted and pursued such grievances.

Plaintiff continued to pursue transfer options after her termination, but was again told that no clerk positions were available. On February 26, 1996, Donna Carter, the manager of the Toledo processing and distribution center, told plaintiff that there was an opening and offered her the job contingent on Carter's review of plaintiff's attendance and work records. On March 4, 1996, plaintiff advised Carter that she would accept the job.

On March 26, 1996, plaintiff received a letter from Cass Gittins, III, the Postal Service's Human Resources Specialist, stating that Carter had decided not to grant plaintiff's request for reassignment. His letter did not specify the reason for Carter's decision not to hire plaintiff.

### Discussion

To survive a motion for summary judgment, the non-moving party must demonstrate the existence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986). Moreover, the non-moving party must produce some evidence that establishes each of the elements on which he or she will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2551–52, 91 L.Ed.2d 265 (1986).

### A. Substantive Claim

In the instant case, plaintiff does not argue that she was qualified for a letter carrier position, the position that she held when she was terminated in November, 1995. Rather, plaintiff claims that, although disabled, she was qualified for light duty assignment as a

clerk, and defendant was required to make reasonable efforts to accommodate her request to transfer to such a position.

Defendant does not dispute that plaintiff is a disabled person or that she was terminated from her position as a letter carrier, nor does defendant contend that the Postal Service does not have to make reasonable efforts to accommodate plaintiff. Defendant argues, however, that no vacant positions were open to which plaintiff could have transferred. Moreover, defendant argues that, once a position did open, plaintiff was denied a transfer to that position due to her poor attendance records and her termination four months earlier.

Under the Rehabilitation Act, federal employers cannot discriminate against disabled persons in hiring, placement or promotions. To state a prima facie case of discrimination under this Act, a plaintiff must demonstrate that she: 1) has a disability; 2) was otherwise qualified to perform the essential functions of the job in question; and 3) was nonetheless adversely treated on the basis of his disability. *Maddox v. University of Tennessee,* 62 F.3d 843, 846 (6th Cir.1995).

Before 1992, employers were not required to reassign employees to suitable positions under the Rehabilitation Act. However, Congress amended the Act to provide that the standards of the Americans with Disabilities Act (ADA), under which reassignment was an option, applied in the Rehabilitation Act context. *See* 29 U.S.C. 794(d). Under 29 C.F.R. § 1614.203(g), employers shall offer to reassign nonprobationary employees if those employees become unable to perform the essential functions of their jobs, unless such reassignment would cause the employer undue hardship. *Shiring v. Runyon,* 90 F.3d 827, 832 (3d Cir.1996). The reassignment should be to an available position at the same level and in the same commuting area as the prior position. *Id.*

■ While the burden is on an employee to show that an accommodation is possible, an employer must make reasonable efforts to accommodate. *Mengine v. Runyon,* 114 F.3d 415, 420 (3d Cir.1997). An employer has a duty to be involved in an interactive process with the employee, and cannot obstruct this process by failing to communicate or acting in bad faith. *See Beck v. University of Wisconsin Bd. of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996); *Hunt–Golliday v. Metropolitan Water Reclamation District of Greater Chicago,* 104 F.3d 1004, 1012 (7th Cir.1997). Indeed, an "employee's initial request for an accommodation ... triggers the employer's obligation to participate in the interactive process." *Taylor v. Principal Financial Group, Inc.,* 93 F.3d 155, 165 (5th Cir.1996). Nevertheless, if an employee fails to prove that there were funded, vacant positions which he could have performed, he cannot prevail.

On March 14, 1995, plaintiff first requested transfer to a light duty position in either Toledo or Port Clinton. She repeated this request on March 22, 1995, and February 23, 1996, but was consistently told that no vacancies were available, and that she could not be accommodated.

■ Defendant submits the affidavit of Jesse Brown, Manager of Human Resources for the Akron Customer Service and Sales District of the Postal Service, stating that no vacancies were available in Toledo or Port Clinton at the time plaintiff applied for light duty clerk assignments. Plaintiff, however, counters this affidavit with that of Robert Newbold, her union representative, which references several clerk positions that were available during that period. Defendant does not counter plaintiff's proof that vacancies existed when she requested accommodation. This disagreement raises a genuine issue of material fact with respect to the availability of light duty clerk positions, and, therefore, summary judgment is inappropriate.

■ In addition, plaintiff submits proof that in March, 1996, Donna Carter, Manager of the Toledo Processing and Distribution Center, offered her a clerk position at that facility, contingent upon a review of her attendance and work records. Plaintiff accepted this job on March 4, 1996, even though it would mean working weekends, holidays and nights. However, plaintiff was notified on March 26, 1996, that Carter had decided not to grant her request for reassignment.

Plaintiff claims that Carter's decision not to finalize the job offer was a result of plaintiff's disability, which by the time of Carter's decision was limited to an inability to work under conditions of smoke, dust, fumes or extreme temperatures. Defendant, however, contends that Carter's decision was based on plaintiff's poor attendance record. In addition, defendant argues that, because plaintiff was terminated on November 24, 1995, she was not eligible for interoffice transfer in March, 1996. Therefore, defendant avers, plaintiff raises no genuine issue of material fact as to whether she was "otherwise qualified" for the clerk position.

I disagree with defendant. First, defendant fails to cite to any evidence, other than Carter's self-serving affidavit, that demonstrates any attendance-related problems on plaintiff's part. Moreover, plaintiff's personnel file reveals no discipline or attendance problems. Her attendance record was never called into question during her grievances and appeals. These circumstances raise doubt as to the reason for which Carter revoked the job offer.

Second, Newbold's affidavit raises a factual question as to whether plaintiff was still an "employee" of the Postal Service in March, 1996. Carter claims that her decision not to finalize the offer to plaintiff was partly based on the fact that plaintiff had been terminated by the Postal Service in November, 1995, and therefore was unable to take advantage of interoffice reassignment. Plaintiff, however, disputes this, and submits Newbold's affidavit, along with the Collective Bargaining Agreement (CBA) between the Postal Service and the National Association of Letter Carriers. Article 16, § 5 of the CBA, as described by Newbold, plaintiff's union representative, permits employees to stay on the union rolls, albeit as non-paid employees, during the pendency of the grievance-arbitration procedure.

Defendant makes no effort to dispute Newbold's characterization of the CBA. Therefore, for purposes of this motion, I find that, in March, 1996, while her grievance procedures were still pending, plaintiff remained eligible for interoffice transfer. Plaintiff thus raises a genuine issue of fact as to whether Carter's decision not to hire her was based on her disability or on either of the factors asserted by defendant.

Because I find plaintiff has presented some evidence on each of the elements she will have to prove at trial, and defendant has failed to prove the lack of any triable issue as to the substantive claim, defendant' summary judgment shall be denied as to this issue.

### B. Punitive Damages

■ Plaintiff prays for punitive damages as part of her recovery. Defendant argues that the Postal Service is entitled to immunity from punitive damages under the 1991 Civil Rights Act, which precludes plaintiffs from recovering damages against "a government, government agency, or political subdivision." 42 U.S.C. § 1981a(b)(1).

Plaintiff argues that, because Congress granted the Postal Service the ability to sue and be sued, its sovereign immunity was waived. Furthermore, plaintiff contends that the Postal Service is not a government agency, but rather an independent establishment of the United States executive branch, and therefore not included in § 1981a(b)(1)'s "government agency" language. Finally, plaintiff claims that, because the Postal Service is self-funding and does not rely on tax dollars, the policy behind immunity from damages suits for government agencies is not present in a suit against the Postal Service.

While plaintiff's policy arguments are not without merit, I find that the majority of courts considering the issue have found in favor of defendant. *See Ausfeldt v. Runyon*, 950 F.Supp. 478 (N.D.N.Y.1997); *Miller v. Runyon*, 932 F.Supp. 276 (M.D.Ala.1996); *Cleveland v. Runyon*, 972 F.Supp. 1326 (D.Nev.1997); *Suhr v. Runyon*, 1995 WL 617478 (N.D.Ill.1995). *Cf. Lussier v. Runyon*, 1993 WL 434078, *2 (D.Me. Oct.15, 1993) (suggesting that Rehabilitation Act plaintiff could seek compensatory and punitive damages against Postal Service).

Recently, faced with the same arguments raised here, the Seventh Circuit reversed a district court's decision that the Postal Service can be held liable for punitive damages. *Baker v. Runyon*, 114 F.3d 668 (7th Cir. 1997). In *Baker*, the plaintiff brought suit

under Title VII, seeking compensatory and punitive damages against the Postal Service for alleged sexual harassment. Baker relied on the fact that the Postal Service's charter allows them to sue and be sued to support her contention that Congress had not meant them to be immune from damages suits.

The Seventh Circuit acknowledged that the "sue and be sued" clause operated as a waiver of sovereign immunity. However, the Court held, this waiver was not coextensive with the availability of punitive damages under Title VII. *Id.* at 671. Rather, whether punitive damages are available depends on two inquiries: 1) whether sovereign immunity has been waived and 2) whether the underlying substantive law provides for punitive damages against the defendant. Thus, because Title VII, under which Baker brought her claim, does not allow punitive damages to be recovered against government agencies, Baker was not entitled to such recovery. *Id.*

Here, then, the inquiry must be whether the Rehabilitation Act provides for punitive damages against government agencies. Under 29 U.S.C. § 794a(a)(1), the remedies available to a Rehabilitation Act plaintiff are the same remedies available under Title VII, 42 U.S.C. § 2000e *et seq.* Title VII plaintiffs may not, under 42 U.S.C. § 1981a(b)(1), recover punitive damages against government agencies. Therefore, although the Postal Service's sovereign immunity is waived through the sue-and-be-sued clause, because the Rehabilitation Act does not provide for punitive damages against government agencies, plaintiff cannot recover such damages.

Baker, like plaintiff here, then argued that the Postal Service was not a "government agency" for purposes of § 1981a. The Seventh Circuit rejected this argument, stating:

> While this court, as well as the Supreme Court, has recognized the quasi-commercial nature of the Postal Service on several prior occasions, neither court has ever held that the Postal Service is anything other than a federal agency. Congress may have vested the Postal Service with significant powers in order to increase its independence and autonomy, but it also provided that the Postal Service is part of the executive branch of the government, that its employees are part of the federal civil service, and that it possess certain powers unique to governmental entities, such as the authority to exercise the power of eminent domain in the name of the United States. *See* 39 U.S.C. §§ 201, 1001(b) and 401(9) (citations omitted).

*Id.* at 670–71. The Sixth Circuit likewise has never held that the Postal Service is anything but a federal agency.

The *Baker* court also rejected the argument, raised by plaintiff here, that the self-funding nature of the Postal Service militates in favor of allowing it to be held liable for punitive damages. The court found that, although the Postal Service might not rely on tax dollars for its everyday operations, it is not "divorced from the United States Treasury" because it is "operated as a basic and fundamental service provided to the people by the Government of the United States ... and supported by the people." *Id.* at 672. Simply, the court found that, because mail delivery is guaranteed to all citizens, even where post offices are not self-sustaining, the Postal Service still depends on the United States Treasury.

### Conclusion

Because plaintiff produces sufficient evidence to raise a genuine issue of material fact on which a jury could find in her favor on the merits of her Rehabilitation Act claim, defendant's motion for summary judgment on that issue is denied. However, because I find, as a matter of law, that plaintiff is not entitled to recover punitive damages from the Postal Service, an agency of the United States government, defendant's motion for summary judgment on that issue is granted.

Accordingly, it is hereby

**ORDERED THAT** defendant's motion for summary judgment (Doc. 18) shall be denied in part and granted in part.

**So ordered.**