**Janet JENSE, Plaintiff,**

v.

**Marvin T. RUNYON, Postmaster General, United States Postal Service, and the United States of America, Defendants.**

No. 2:95 CV 328.

United States District Court,
D. Utah,
Central Division.

Jan. 14, 1998.

Vincent C. Rampton, Scott D. Cheney, ones Waldo Holbrook & McDonough, Salt Lake City, UT, for Plaintiff.

Stephen J. Sorenson, U.S. Atty's Office, Utah, for Defendants.

**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE PLEADINGS AND DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

KIMBALL, District Judge.

This matter is before the Court on Defendants' Motion for Partial Summary Judgment on the Pleadings and Defendants' Motion for Partial Summary Judgment. The two motions were considered together and argued before the Court on January 6, 1998. Vincent C. Rampton appeared on behalf of Plaintiff Janet Jense. Stephen J. Sorenson appeared on behalf of Defendants Marvin Runyon and the United States of America. The Court has carefully considered all pleadings, memoranda, deposition transcripts, and other materials submitted by the parties, and the arguments advanced by the parties at oral argument. Now being fully advised, the Court enters the following memorandum decision and order.

## I. BACKGROUND

Plaintiff Janet Jense ("Jense") filed an amended complaint on March 20, 1996, alleging Defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–16, by constructively discharging her from her postal service job based on gender. Jense also asserts common law claims of negligent supervision and intentional infliction of emo-

tional distress. The basis of Jense's complaint is that, while working as a postal carrier for the United States Postal Service in Pleasant Grove, Utah, she was subjected to an ever-escalating pattern of sexual harassment at the hands of a co-worker and part-time supervisor.

## II. STANDARD OF REVIEW

A motion for summary judgment on the pleadings Under Rule 12(c) of the *Federal Rules of Civil Procedure* is appropriate when the material facts are not in dispute and only questions of law remain. Such a motion will be granted when the movant clearly establishes that no material issue of fact remains and that the movant is entitled to judgment as a matter of law. *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 810 (9th Cir.1988).

A motion for summary judgment under Rule 56 of the *Federal Rules of Civil Procedure* is appropriate when the pleadings, depositions, and affidavits on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The movant bears an initial burden to demonstrate an absence of evidence to support an essential element of the non-movant's case. If the movant carries this initial burden, the burden then shifts to the non-movant to make a showing sufficient to establish that there is a genuine issue of material fact regarding the existence of that element. "An issue of material fact is genuine if a reasonable jury could return a verdict for the non-movant." *Wolf v. Prudential Ins. Co.*, 50 F.3d 793, 796 (10th Cir.1995). In applying the summary judgment standard, the factual record and reasonable inferences therefrom are to be examined in the light most favorable to the non-movant. *Id.*

## III. DISCUSSION

### A. Issues Raised by Defendants' Motion for Partial Summary Judgment on the Pleadings.

■ The first question raised by Defendants' Motion for Partial Summary Judg-

ment on the Pleadings is whether the Postal Service is a "government agency" under 42 U.S.C. § 1981a(b), which exempts government agencies from punitive damages in Title VII actions. The Defendants urge adoption of the reasoning advanced by the Seventh Circuit Court of Appeals in *Baker v. Runyon*, 114 F.3d 668 (7th Cir.1997), the only circuit decision to consider the issue. The *Runyon* court noted the absence of any articulated exceptions to the plain language in § 1981a(b) and held that the government agency exclusion applies to the Postal Service. Jense argues that the Supreme Court's decision in *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), subjecting the Postal Service to pre-judgment interest under a statute authorizing the Postal Service to "sue and be sued," indicates that the Postal Service is to be operated in a manner similar to private commercial entities and is not entitled to the presumption of sovereign immunity government entities usually enjoy. This argument was specifically considered and rejected by the *Baker* court. "While this court, as well as the Supreme Court, has recognized the quasicommerical nature of the Postal Service on several prior occasions ... neither court has ever held that the Postal Service is anything other than a federal agency." *Baker*, 114 F.3d at 670 *(internal citations omitted)*. This Court finds the reasoning in *Baker* to be persuasive and holds that the Postal Service is a "government agency" exempt from punitive damages in a Title VII action under 42 U.S.C. § 1981a(b).[1]

■ Defendants' Motion for Partial Summary Judgment on the Pleadings also raises the question of whether the limitation on damages in 42 U.S.C. § 1981a(b)(3)(D) applies in this case to limit to $300,000 any recovery Jense receives on her Title VII action for compensatory damages. Jense acknowledges that the limit applies, but argues that she is entitled to go to trial without having any such pretrial limitations on recoverable damages imposed. This Court agrees and holds that application of the limit is

---

1. It is perhaps instructive to note that every federal district court to have considered this issue has found that the Postal Service is a government agency with only two exceptions. *Baker v.* *Runyon*, 922 F.Supp. 1296 (N.D.Ill.1996); *Roy v. Runyon*, 954 F.Supp. 368 (D.Me.1997). The district court in *Baker* was overturned by the previously-cited Seventh Circuit opinion.

premature unless and until a jury recommends an award in excess of the limit.

### B. Issues Raised by Defendants' Motion for Summary Judgment.

### 1. Failure to Exhaust Administrative Remedies.

■ The Defendants first contend that Jense's Title VII claim must be dismissed because Jense failed to exhaust her administrative remedies by consulting with an EEO counselor within 45 days of the act giving rise to the claim. It is well established that exhaustion of administrative remedies is a condition precedent to the initiation of a civil action for employment discrimination in federal (including postal) employment in violation of Title VII, 42 U.S.C. § 2000e–16. *Brown v. General Services Admin.*, 425 U.S. 820 at 832, 96 S.Ct. 1961 at 1967, 48 L.Ed.2d 402 (1976); *Gulley v. Orr*, 905 F.2d 1383, 1384 (10th Cir.1990).

Pursuant to § 2000e–16, the Equal Employment Opportunity Commission has promulgated regulations governing the processing of administrative complaints of discrimination. In order properly to exhaust administrative remedies, a complainant must first contact an EEO counselor within 45 days of the alleged act of discrimination. *29 C.F.R. § 1614.105(a)(1)*. Where a complainant does not contact an EEO counselor within 45 days, the agency is instructed to dismiss the complaint (§ 1614.107(b)), unless the complainant qualifies for one of the exceptions to the timeliness requirement set forth at § 1614.105(a)(2).

The parties do not dispute that the latest date when harassment could have occurred was August 20, 1994, the effective date of Jense's resignation from the Postal Service. Nor do the parties dispute that Jense did not contact an EEO counselor until November 28, 1994—55 days beyond the expiration of the 45–day deadline. Defendants consequently argue that Jense has failed as a matter of law to establish a genuine issue of fact regarding her qualification for either a regulatory or an equitable exception. Considering the evidence in the light most favorable to Jense, this Court cannot agree.

The regulations provide four circumstances under which the 45–day time limit may be extended, namely, when the complainant shows:

(1) that she was not notified of the time limits and was not otherwise aware of them;

(2) that she did not know and reasonably should not have known that the discriminatory matter or personnel action occurred;

(3) that despite due diligence she was prevented by circumstances beyond her control from contacting the counselor within the time limits;

(4) or, for other reasons considered sufficient by the agency or Commission.

*29 C.F.R. § 1614.105(a)(2)*. Jense argues that the circumstances in this case entitle her to application of the first, third, and possibly forth exception, as well as to equitable tolling.

### a. Regulatory Exception One.

■ The first regulatory exception applies when the complainant shows that she was not notified of the time limits and was not otherwise aware of them. Employees are not entitled to personal notice of the EEO process. The regulations require only that a federal agency, such as the Postal Service:

make written materials available to all employees and applicants informing them of the variety of equal employment opportunity programs and administrative and judicial remedial programs available to them, and prominently post such written materials in all personnel and EEO offices throughout the workplace ... [and] [p]ublicize to all employees and post at all times the names, business telephone numbers, and addresses of the EEO Counselors, a notice of the time limits, and the necessity of contacting a Counselor....

*29 C.F.R. § 1614.102(b)(4) and (6)*. Defendants argue that Jense was put on notice of the 45–day deadline through two written postings, information disseminated during an employment orientation session, and information disseminated during an office meeting, or "standup" talk. For purposes of this motion, Jense's assertion that she did not have

actual knowledge of the deadline must be accepted as true.

██ Authorities are split over whether an employer's written posting amounts to *per se* notice of the filing period, or whether the analysis must also consider whether the posting was "reasonably geared to inform the complainant of the time limits." This Court need not decide the appropriate standard inasmuch as neither posting contained the information required by the regulation. The first written posting, titled "Equal Employment Opportunity is the Law," fails to satisfy the regulation inasmuch as it fails to explain that sexual harassment is a form of employment discrimination. A person untrained in the law could not reasonably be expected to know that sexual harassment constitutes employment discrimination on the basis of sex. Such an employee, as Jense herself claims to have done, could reasonably have interpreted the process outlined in the poster to apply only to discriminatory acts like being denied a promotion or pay raise because of one's gender. The regulation requires that employees be informed "of the variety of equal employment opportunity programs and administrative and judicial remedial programs available to them." The Equal Employment Opportunity poster failed to notify employees that the process was to be utilized to advance claims of sexual harassment.

The second poster, entitled "USPS Policy on Sexual Harassment," fails to satisfy the regulation because it fails to provide "notice of the time limits, and the necessity of contacting a Counselor." This poster nowhere mentions a 45–day time limit, nor does it indicate that the initiation of an EEO proceeding is a prerequisite to the pursuit of legal remedies under Title VII. To the contrary, the poster describes a variety of avenues through which an employee may seek relief in addition to the EEO process, and, in this sense, may have been affirmatively misleading.

Defendants next allege that Jense was alerted to the presence of the posters during an employment orientation session. Jense has presented evidence that she did not attend the session. Even if she had, Sandy Halladay, the orientation presenter, testified

at her deposition that she only instructed employees to look for the Equal Employment Opportunity poster if they were subjected to discrimination. She testified that she did not make any specific reference to the procedures to be followed in the event of sexual harassment. Because her presentation did not include any explanation of what constituted employment discrimination under Title VII, her presentation failed to provide Jense notice of the deadline for the same reason that the Equal Employment Opportunity poster itself failed to do so.

Defendants finally allege that Jense was alerted to the presence of the poster on March 25, 1994, during a weekly office meeting, or "standup talk." The evidence conflicts as to the topics discussed at the talk. Both Johnny Martinez, Jense's supervisor, and Dixie Grace, Jense's fellow employee, testified that Martinez informed attendees that the Equal Employment Opportunity poster applied to claims of sexual harassment. Jense does not remember sexual harassment as a topic, and the attendance roll bears two labels—"Sexual Harassment in the Workplace" and "Safety talk." Because conflicts in the evidence must be resolved in favor of the non-movant, this Court is satisfied that Jense has met her burden to put forward evidence upon which a reasonable juror could conclude that she was not alerted to the 45–day deadline during the standup talk. Accordingly, Jense is entitled to claim at trial that her circumstances are within the first regulatory exception.

b. Regulatory Exception Three.

██ Jense is not entitled to claim at trial that her circumstances are within the third regulatory exception. Jense claims that she delayed contacting an EEO counselor because she feared retaliation by her harasser, who she believed would be informed by Martinez of any complaint she might raise concerning him. Fear of her harasser and awareness of his friendly relationship with Martinez or other members of local management may have justified Jense's fear of reporting her complaint at that level. However, it does not justify Jense's failure to report her complaint to an outside EEO counselor.

Moreover, in her affidavit submitted in opposition to summary judgment, Jense stated with regard to the 45-day time limit, "Had I been made aware of any such requirement, I would have filed a grievance with the USPS EEO office sooner than I did." In the face of such a statement, a reasonable juror could not conclude that Jense delayed because she feared retaliation, and, therefore, Defendants' Motion is granted as to this point.

#### c. Regulatory Exception Four.

Nor is Jense entitled to claim at trial that her circumstances are within the fourth regulatory exception. Jense does not cite any interpretations of this exception, which provides an exception for "[o]ther reasons considered sufficient by the Agency or Commission." The provision appears merely to enable the agency to make equitable exceptions and not to provide an independent ground for excusing compliance with the time limit. Jense offers no unique arguments why this exception should apply, and this Court holds as a matter of law that it does not.

#### d. Equitable Tolling.

In addition to the exceptions set forth at 29 C.F.R. § 1614.105(a)(2), a complainant may also be entitled to an equitable exception. However, equitable exceptions to Title VII time limitations are to be narrowly construed. "The Tenth Circuit has generally recognized equitable tolling of Title VII time limitations only if the circumstances of the case rise to the level of active deception which might invoke the powers of equity to toll the limitations period"—e.g., where a plaintiff has been lulled into inaction by her past employer, an agency, or the court, or where a plaintiff has been actively mislead. *Biester v. Midwest Health Servs., Inc.,* 77 F.3d 1264, 1267–68 (10th Cir.1996). Jense has created a material factual dispute over whether she is entitled to equitable tolling given that the written posters did not contain the information required by regulation and, in the case of sexual harassment poster, may have been affirmatively misleading.

#### 2. Failure to State a Claim of Hostile Work Environment Sexual Harassment under Title VII.

Title VII forbids both *quid pro quo* sexual harassment and hostile work environment sexual harassment. An employer will generally be held strictly liable for any act of its employee constituting *quid pro quo* sexual harassment. Whether an employer will be held liable for an act of its employee constituting hostile work environment sexual harassment depends on a variety of factors, including the employment status of the harasser and the employer's awareness and response to the harasser's conduct.

Jense first argues that her harasser's conduct constitutes *quid pro quo* sexual harassment for which Defendants should be held strictly liable. However, her amended complaint did not state such a claim, and she has not advanced evidence of its essential element, namely, that specific benefits of employment were conditioned on sexual demands. *Harrison v. Eddy Potash, Inc.,* 112 F.3d 1437, 1443 (10th Cir.1997). Her argument to the contrary is unsupported by citations to the record, and this Court finds as a matter of law that a claim of *quid pro quo* sexual harassment is unsupportable.

The Tenth Circuit has considered and defined the requirements for imposing liability on an employer for hostile work environment sexual harassment in two opinions. *Creamer v. Laidlaw Transit, Inc.,* 86 F.3d 167 (10th Cir.1996), sets forth three categories or conditions under which an employer will be liable for harassment committed by the victim's co-worker. *Harrison v. Eddy Potash, supra,* adds an additional category applicable when the harassment is committed by the victim's supervisor. Because Jense has raised a genuine issue of material fact as to Her harasser's employment status as a co-worker or supervisor, all four *Harrison* categories are considered.

#### a. *Harrison* Category One.

Under the first *Harrison* category, an employer will be liable for hostile work environment sexual harassment committed by one of its employees when the perpetrator

committed the harassment while acting within the scope of his employment. *Harrison*, 112 F.3d at 1446. Jense argues that this condition is satisfied because supervisors Johnny Martinez and Ralph Thornton were acting within the scope of employment in responding to Her harasser's harassment of Jense. However, the question is whether the perpetrator of the harassment was acting within the scope of his employment, and her harasser clearly was not. As the Tenth Circuit concluded, category one "is rarely applicable in hostile work environment cases because '[s]exual harassment simply is not within the job description of any supervisor or any other worker in any reputable business.'" 112 F.3d at 1444 (*quoting Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1417–18 (10th Cir.1987)). Accordingly, the first *Harrison* category is inapplicable as a matter of law.

### b. *Harrison* Category Two.

 The second *Harrison* category applies when an employer knew about, or should have known about, the harassment and failed to respond in a reasonable manner. *Harrison*, 112 F.3d at 1446. "Under this theory of employer liability, the plaintiff must establish 'that the employer had actual or constructive knowledge of the hostile environment,' but 'did not adequately respond to notice of the harassment.'" *Id.* (*quoting Staszewski, Using Agency Principles for Guidance in Finding Employer Liability for a Supervisor's Hostile Work Environment Sexual Harassment, 48 Vand.L.Rev. 1057, 1080 (May 1995)*). Defendants argue that Jense has failed to establish a Title VII claim under this category because local management responded to each instance of harassment of which they became informed. This Court, however, is persuaded that Jense has established a genuine issue of material fact both as to the adequacy of management's response to each individual indication of possible harassment of which they became aware and as to the adequacy of management's response given their cumulative knowledge of the unfolding events and the personalities involved.

### c. *Harrison* Category Three.

 To recover under the third *Harrison* category, a plaintiff "must show that the employer manifested in the [perpetrator] the authority to act on its behalf, that such manifestation resulted in harm to the plaintiff, and that the plaintiff acted or relied on the apparent authority in some way." *Id.* (*quoting 48 Vand.L.Rev. at 1087*). In the context of harassment committed by a supervisor, the *Harrison* court elaborated on the requirement, stating:

> The first element is established "[w]henever an employer vests its supervisor with the authority to control significant aspects of the work environment." The second element is satisfied by demonstrating that the supervisor subjected plaintiff to sexual harassment. The third element (that plaintiff acted or relied on the apparent authority of her supervisor) is the most difficult to prove and will often hinge upon whether the employer has a formal policy against sexual harassment. "When an employer lacks a formal written grievance policy, a victim of sexual harassment will reasonably perceive her only available options to be silently acquiescing in the harassment or leaving her job." In contrast, if an employer has taken steps "to remove any possible inference that a supervisor has authority to sexually harass his subordinates," the victim is likely aware that harassment is not authorized and reliance on apparent authority will be difficult to establish.

*Id.* (*internal citations to 48 Vand.L.Rev. at 1087–90 omitted*). Jense's claim fails under this category as a matter of law. Jense has not claimed and the record does not reflect any evidence that Jense believed that her harasser performed the acts she alleges (including kissing, touching, exposure, and forced touching of genitals) under any "apparent authority" from the Postal Service. Her own evidence indicates the contrary. Jense's deposition testimony and handwritten account show that she was aware that a harassment policy was in place and that complaint procedures were available. In fact, Jense's own statements show that she feared lodging a complaint against her harasser not

because management would condone his behavior, but because he would be punished and retaliate. In this regard, it is important to remember that it is the *employer* who must create the impression that the perpetrator is acting under its authority. *Id.* at 1450. The fact that the perpetrator claimed such authority is not by itself determinative.

### d. *Harrison* Category Four.

*Harrison* category our "allows an employer to be held liable, even if a sexual harassment policy is in place and is made known to plaintiff, where the supervisor uses his actual or apparent authority to aid or facilitate his perpetration of the harassment." *Id.* at 1446. The Tenth Circuit has emphasized, however, "that this interpretation does not allow liability to attach where the harasser's agency relationship with the plaintiff merely provided him with proximity to plaintiff." *Id.*

■ Jense's assertion that she had "reasonable cause" to believe that her harasser's close relationship with management and "204B" status was such that he could dictate hours and routes worked in order to have better access to her is unsupported by citation to the record and does not entitle her to present this theory at trial. Her harasser's 204B status meant that he had the power to act, by specific assignment, as a temporary supervisor when regular management was absent. While Jense admits that none of the alleged acts of harassment occurred while he was acting as a 204B supervisor, she claims that his 204B status demonstrated a superior rank or power, which did not depend on whether he was acting in his 204B capacity at any particular moment. Jense argues, essentially, for the kind of strict liability for hostile work environment harassment that *Harrison* considered and rejected. Liability attaches under this category only when the plaintiff can specifically demonstrate that the harasser had the actual or apparent *ability* to use his authority in order to harass her. Inadmissible suppositions, or even a "mere scintilla of evidence," are insufficient to defeat summary judgment. Jense has failed her burden to put forth evidence showing that her harasser abused his 204B status in order to facilitate the harassment.

### 3. Cause of Action under 42 U.S.C. § 2000e(b)(1).

Jense acknowledges that no cause of action lies against the Postal Service under 42 U.S.C. § 2000e(b)(1) and that 42 U.S.C. § 2000e–16(c) is the proper basis for her Title VII action. Defendants having no objection, the Court ordered her amended complaint accordingly amended during oral argument.

### 4. Federal Employees' Compensation Act as a Bar.

■ Defendants argue that Jense's tort actions are barred by three separate federal statutes. Defendants first argue that because Jense claims injuries sustained while in the performance of her duties as a federal employee, her tort claims are barred by the Federal Employees' Compensation Act, 5 U.S.C. § 8101, *et seq.*, which provides her exclusive remedy. FECA is intended to compensate job-induced injury and illness, and an injured federal employee may not bring an action against the United States under the Federal Tort Claims Act when there is a substantial question as to whether or not the injury is within the scope of FECA. When such a question exists, the employee must first seek and be denied relief by the Secretary of Labor, acting in his capacity as administrator of FECA. On the other hand, if no substantial question of FECA coverage is presented, the employee may prosecute her tort claim without first applying to the Secretary of Labor. *Bailey v. United States,* 451 F.2d 963 (5th Cir.1971).

■ Jense's tort claims are not job-related injuries within the scope of FECA coverage. FECA defines "injury" to include, "in addition to injury by accident, a disease proximately caused by the employment, and damage to or destruction of medical braces, artificial limbs, and other prosthetic devices...." *5 U.S.C. § 8101(5).* As the Ninth Circuit explained in *Nichols v. Frank,* 42 F.3d 503, 515 (9th Cir.1994), harm suffered as the result of sexual harassment is not an "injury" within the meaning of FECA. The harm arises from an intentional act, not an

accidental one; the harm is not a "disease"; and the harm does not constitute damage to or destruction of medical braces. *Id.* Therefore, FECA does not bar the present action.

### 5. Civil Service Reform Act as a Bar.

■ Defendants next argue that Jense's tort claims are preempted by the Civil Service Reform Act, 5 U.S.C. § 2101, *et seq.*, which permits federal employees to challenge prohibited personnel practices by their supervisors. The term "prohibited personnel practice" is a defined term under the act, and includes a variety of personnel decisions and actions, such as appointments, promotions, disciplinary actions, transfers, and decisions concerning pay and benefits. *5 U.S.C. § 2302.* None of the operative facts supporting Jense's tort claims has anything to do with her position, grade, pay level, or other personnel action of the type covered by the act. Defendants citing no authority to the contrary, this Court finds that Jense's tort claims do not involve personnel decisions or personnel actions that constitute the "prohibited personnel practices" to which the CSRA applies.

### 6. Federal Tort Claims Act as a Bar.

■ Defendants argue thirdly that Jense's tort claims are barred by the Federal Tort Claims Act, which preserves the United States' immunity from suit for "[a]ny claim arising out of assault [or] battery." *28 U.S.C. § 2680(h).* Defendants argue that the acts forming the core of Jense's tort claims—pinching on the buttocks, unwanted touching and attempts to touch, forcible kissing, being forced to touch another's genitals—all constitute either battery or assault.

■ Jense argues that her tort claims sound in negligence, not intentional tort, the gravamen of 28 U.S.C. § 2680. However, the fact that Jense's tort claims against the government sound in negligence is not determinative:

> In any case in which the employee has intentionally injured another, the tort asserted against the government, regardless of whether it is called negligence, is indeed an intentional tort attributable to the government. This may well be because of the

doctrine of *respondeat superior* or because the employee is closely related to the government. It would appear to be the proximity of the employee which gives the government's role its intentional quality.

*Hoot v. United States,* 790 F.2d 836, 838 (10th Cir.1986) *(quoting Naisbitt v. United States,* 611 F.2d 1350, 1356 (10th Cir.1980).) Plaintiff's citation to *Doe v. U.S.,* 838 F.2d 220 (7th Cir.1988), is inapposite, establishing only that where the government assumes a special duty to the victim prior to the assault, and the government breaches that duty, the claim arises out of the breach of duty—the occurrence of the assault serving "only to establish the *extent* of the plaintiff's injury." *Id.* at 223. *(quoting Thigpen v. U.S.,* 800 F.2d 393, 399 n. 10 (4th Cir.1986)).

■ Jense also argues that her action does not rest exclusively on claims of physical assault, but also on claims of "psychological torment," including sexual advances and intimidation through threat of violence. After reviewing Jense's deposition testimony and her handwritten statement, this Court is not persuaded that the acts forming the substance of Jense's tort claims constitute assault and battery. Among other things, Jense has alleged that her harasser asked her invasive sexual questions, made unwanted sexual advances, and paid her unwelcome attention by visiting her on her mail route. The acts listed by Defendants are the most obvious and egregious forms of harassment Jense alleges, but, viewed in context of the entire course of events, do not themselves form the core or substance of her claim. While Defendants are correct that threat of violence constitutes assault, such threats were directed at preventing Jense from reporting the sexual harassment and are not necessarily connected to the underlying acts constituting harassment. Therefore, this Court holds that Jense's tort claims are not barred by the FTCA.

### 7. Failure to State a Claim of Negligent Supervision.

■ Defendants finally argue that Jense's claim for negligent supervision fails inasmuch as Jense's employer owed her no

duty of care under the circumstances. Utah law determines the extent of the duty of care the Defendants owed to Jense:

> In the context of a claim for negligent supervision or retention, a duty may arise when an employer could reasonably be expected, consistent with the practical realities of the employer/employee relationship, to appreciate the threat to a plaintiff of its employee's actions and to act to minimize or protect against that threat.

*Jackson v. Righter*, 891 P.2d 1387, 1392 (Utah 1995). Essentially, a duty arises under Utah law when the conditions of the second. *Harrison* category are met, that is, the employer knew or should have known about the harassment and failed to respond reasonably. As they did with respect to the application of that category, Defendants argue that, prior to Jense's resignation, they had no knowledge or reason to know that she was the victim of unwanted sexual advances or verbal threats, and therefore owed her no duty. Again as above and for the same reasons, this Court finds that whether Defendants responded reasonably given the totality of the circumstances is a question for the jury to decide and is a matter with respect to which summary judgment is not warranted.

## IV. CONCLUSION

For the foregoing reasons, and good cause appearing, IT IS HEREBY ORDERED that Defendants' Motion for Partial Summary Judgment on the Pleadings and Defendants' Motion for Partial Summary Judgment are granted in part and denied in part as set forth above.